UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDRE MOKHTARIANS,

    Plaintiff,

v.                                        Case No. 8:20-cv-1795-CEH-AAS

KILOLO KIJAKAZI,
Acting Commissioner,[1]
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Andre Mokhtarians requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying his claim for Supplemental Security Income (SSI) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the parties' joint memorandum, and the plaintiff's reply brief and notice of supplemental authority, it is **RECOMMENDED** that the Commissioner's

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

decision be **AFFIRMED.**

I.     **PROCEDURAL HISTORY**

On July 28, 2017, Mr. Mokhtarians applied for SSI, alleging disability since March 1, 2017. (Tr. 20). Disability examiners denied Mr. Mokhtarians' application initially and after reconsideration. (Tr. 107–118). At Mr. Mokhtarians' request, the ALJ held a hearing on June 17, 2019. (Tr. 36–63, 119–121). The ALJ issued an unfavorable decision to Mr. Mokhtarians on July 19, 2019. (Tr. 17–34). The Appeals Council denied Mr. Mokhtarians' request for review on June 16, 2020, making the ALJ's decision final. (Tr. 1–7). Mr. Mokhtarians requests judicial review of the Commissioner's final decision. (Doc. 1).

II.    **NATURE OF DISABILITY CLAIM**

A.     **Background**

Mr. Mokhtarians was thirty-seven years old on the date of his application for SSI. (Tr. 28). Mr. Mokhtarians has a high school education and one year of college. (Tr. 28, 165). Mr. Mokhtarians has past relevant work as a night auditor for a hotel. (Tr. 165).

B.     **Summary of the ALJ's Decision**

The ALJ must follow five steps when evaluating a claim for disability.[2] 20 C.F.R. § 416.920(a). First, if a claimant is engaged in substantial gainful activity,[3] he is not disabled. 20 C.F.R § 416.920(b). Second, if a claimant has no impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, he has no severe impairment and is not disabled. 20 C.F.R § 416.920(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, he is not disabled. 20 C.F.R § 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if a claimant's impairments do not prevent his from doing past relevant work, he is not disabled. 20 C.F.R § 416.920(e). At this fourth step, the ALJ determines the claimant's residual functional capacity (RFC).[4] *Id.* Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent his from performing work that exists in the national

---

[2] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 416.920(a)(4).

[3] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R § 416.910.

[4] A claimant's RFC is the level of physical and mental work he can consistently perform despite his limitations. 20 C.F.R § 416.945(a).

economy, he is not disabled. 20 C.F.R § 416.920(g).

The ALJ determined Mr. Mokhtarians did not engage in substantial gainful activity since July 28, 2017. (Tr. 22). The ALJ found Mr. Mokhtarians had the following severe impairments: degenerative disc disease, hypertension, obesity, diabetes mellitus, depression, and anxiety. (Tr. 22). But the ALJ found none of Mr. Mokhtarians' impairments or any combination of his impairments meet or medically equaled the severity of an impairment in the Listings. (Tr. 23).

The ALJ found Mr. Mokhtarians had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b)[5] except:

> [Mr. Mokhtarians] can stand for two hours and walk for two hours; the rest of the time the individual would be able to sit as needed; the claimant cannot climb ladders, ropes, scaffolds, ramps, or stairs; the jobs would be on flat level ground with no foot pedals; the claimant uses a cane to ambulate; the job must consist of only one to two step instructions and no contact with the public and only occasional contact with coworkers.

(Tr. 24).

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

Using a Vocational Expert's (VE) testimony, the ALJ then determined Mr. Mokhtarians could not perform his past work as a night auditor. (Tr. 28). In the alternative, the ALJ found there were other jobs that existed in significant numbers in the national economy that Mr. Mokhtarians could perform. (Tr. 29). Specifically, Mr. Mokhtarians could perform the requirements of occupations such as addresser. (Tr. 61). Thus, the ALJ concluded Mr. Mokhtarians was not disabled at any time since July 28, 2017, the date his DIB application was filed. (Tr. 29).

### III. ANALYSIS

#### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is

not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Mr. Mokhtarians raises these two issues on appeal: (1) whether the ALJ properly considered a May 1, 2018 psychologist's report (Doc. 19, pp. 16–17); and (2) whether substantial evidence supports the ALJ's finding that that psychologist's report was unpersuasive (*Id.* at pp. 19–32).

> **1. Whether the ALJ properly evaluated the persuasiveness of Dr. Gerard Boutin, Ph.D.'s May 1, 2018 medical opinion.**

Mr. Mokhtarians argues that the ALJ improperly considered the persuasiveness of Dr. Boutin's May 1, 2018 psychology report. (Doc. 19, pp. 16).

Dr. Boutin, Mr. Mokhtarians' treating psychologist, conducted a mental health evaluation on Mr. Mokhtarians on January 10, 2018. (Tr. 380–385). This evaluation found Mr. Mokhtarians was "unable to meet competitive standards"[6] for the following skills:

> remembering work like procedures; maintain attention for two hours increments; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal work day and work week without interruption from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisor; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress and be aware of normal hazards and take appropriate precautions

(Tr. 27, 383). A second mental health evaluation conducted by Dr. Boutin on May 1, 2018 found "extremely similar" results with "no substantial differences." (Doc. 19, pp. 16; Tr. 391–397). Though the ALJ cited the second evaluation in his written decision, (Tr. 27), Mr. Mokhtarians argues the ALJ did not state with sufficient particularity the weight given to this May 1, 2018 evaluation. (Doc. 19, pp. 16–17) (*citing Sharfarz v. Bowen*, 825 F.2d 278, 279

---

[6] Dr. Boutin's mental health evaluation form notes the phrase "unable to meet competitive standards" is defined as when a "patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting." (Tr. 383).

(11th Cir. 1987) (per curiam).

The Commissioner argues in response that Mr. Mokhtarians relies on since-revised regulations for the proposition that an ALJ must independently weight and evaluate separate medical opinions from a single doctor. (Doc. 19, p. 17). The Commissioner claims the revised regulations "explicitly dictate than an ALJ will evaluate multiple opinions from one doctor in a single analysis." (*Id.*) (*citing* § 416.920c(b)(1)). The Commissioner argues under this revised standard, the ALJ's citation shows the ALJ properly considered the May 1, 2018 mental health evaluation. (*Id.* at 19).

The Commissioner is correct. "Pursuant to the revised regulations, applicable to claims filed after March 27, 2017, an ALJ need not 'defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources.'" *Anthony v. Kijakazi*, No. 1:20-cv-110-JRH-BKE, 2021 WL 4304725, at *3 (S.D. Ga. Sept. 3, 2021) (*citing* C.F.R. §§ 404.1520c(a) (2017); 416.920c(a) (2017)). Under the current regulations, "the ALJ need not articulate how it considered the factors for each medical opinion or prior administrative medical finding from one medical source individually." *Id.* at *4 (*citing Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019)). Instead, "when a

8

medical source provides multiple medical opinion(s) or prior administrative medical finding(s), [the Commissioner] will articulate how [it] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis." 20 C.F.R. §§ 416.920c(b)(1) (2017).

The ALJ did so here. The ALJ's written decision references both Dr. Boutin's January 10, 2018 evaluation and May 1, 2018 evaluation alongside a medical opinion Dr. Boutin gave in 2016. (Tr. 27). The ALJ found the severe symptoms and restrictions found in Dr. Boutin's opinion inconsistent with mental health evaluations conducted by other doctors, unsupported by the relevant medical evidence, and unpersuasive. (Tr. 27–28). The ALJ found as persuasive an evaluation from examining psychologist Dr. Linda Appenfeldt, Ph.D., that determined Mr. Mokhtarians' memory, persistence and sustained concentration was "within normal limits" because it was "consistent with the longitudinal treatment history" that included only "conservative modalities such as therapy and medication management." (Tr. 27, 287–292). The ALJ further found two state mental health consultants, Dr. Catharina Beltink, Ph.D., and Dr. Bevlyn Sagon, Ph.D., conducted evaluations of the record evidence that were more "consistent with the findings from" Dr. Appenfeldt's report than Dr. Boutin's evaluations. (Tr. 28, 64–80, 83–100). The ALJ applied the correct legal standards and properly considered Dr. Boutin's mental health

9

evaluation in concert with the record evidence.

> **2. Whether substantial evidence supports the ALJ's finding that Dr. Boutin's 2018 opinions are unpersuasive.**

Mr. Mokhtarians argues substantial evidence does not support the ALJ's finding that Dr. Boutin's 2018 opinions are unpersuasive. (Doc. 19, pp. 19–32). Mr. Mokhtarians contends the ALJ failed to clearly articulate the rationale for rejecting Dr. Boutin's opinions. (*Id.* at 20–22). Mr. Mokhtarians argues Dr. Boutin's opinions are "not inconsistent with the longitudinal history and should be given great weight." (*Id.* at 22–29). Mr. Mokhtarians claims the ALJ's rationale for not giving Dr. Boutin's medical opinions controlling weight "because Mr. Mokhtarians did not go to the emergency room or be hospitalized because of psychologically-based symptoms is not a basis to reject an opinion or determine whether one is disabled." (*Id.* at 29–30). Finally, Mr. Mokhtarians asserts the "inconsistency between the opinion of Dr. Boutin and the findings of Dr. Appenfeldt is not substantial." (*Id.* at 31–32).

The Commissioner argues substantial evidence supports the ALJ's conclusion that Dr. Boutin's medical opinions are unpersuasive. (*Id.* at 36–37). The Commissioner argues the ALJ "thoroughly and properly analyzed Dr. Boutin's opinions pursuant to the revised medical evidence regulations." (*Id.* at 32–37). The Commissioner further contends the ALJ properly considered

both Mr. Mokhtarians' conservative treatment history and Dr. Appenfeldt's examination findings when determining the persuasiveness of Dr. Boutin's medical opinions. (*Id.* at 37–39).

Substantial evidence supports the ALJ's conclusion that Dr. Boutin's medical opinions are unpersuasive. On the issue of whether the ALJ sufficiently articulated his rationale for finding Dr. Boutin's medical opinions unpersuasive, ALJs are required to consider two factors when evaluating the persuasiveness of medical opinions: (1) how supported the opinions are by objective, relevant evidence; and (2) how consistent the opinions are with evidence from other medical sources. 20 C.F.R. § 416.920c(b)(2), (c)(1–2).

Upon "careful consideration" of the medical evidence, the ALJ concluded Dr. Boutin's medical opinions were inconsistent with other medical opinions in the record and did not "support the severe functional limitations" Mr. Mokhtarians claimed. (Tr. 25, 27). The ALJ found Mr. Mokhtarians' conservative treatment plan, including "therapy and medication management," coupled with the absence of evidence that he "sought treatment or assistance from various community resources" or experienced "emergency room visits, hospitalizations, or inpatient treatment due to psychologically based symptoms" supported "*some* of [Mr. Mokhtarians'] allegations regarding psychological[] limitations, but it suggests fewer limitations than generally

11

alleged." (Tr. 26).

Further, the ALJ concluded the medical opinions of Dr. Appenfeldt, Dr. Beltink, Dr. Sagon, and Dr. Thomas Bixler, M.D., were more consistent with Mr. Mokhtarian's overall treatment history "which consisted mostly of conservative primary care treatment." (Tr. 27–28, 64–80, 83–100). Each evaluation generally determined Mr. Mokhtarians can sustain attention, follow simple instructions, and perform routine tasks for extended periods of time. (Tr. 77, 96–97, 290).

Though Mr. Mokhtarians cites lengthy passages of Dr. Boutin's evaluations in arguing his medical opinions "should be given great weight," (Doc. 19, p. 29), the court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Phillips*, 357 F.3d at 1240. Unlike the cases cited by Mr. Mokhtarians,[7] the ALJ in this matter clearly articulated why Dr. Boutin's mental health evaluations were inconsistent with other evaluations of Mr. Mokhtarians' mental health and

---

[7] *See Cain v. Comm'r, Soc. Sec. Admin.*, 777 F. App'x 408, 410 (11th Cir. 2019) (determining the ALJ "did not clearly state that [the doctor's] specific opinions were not bolstered by the evidence, were contradicted by the evidence, or were conclusory or inconsistent with [his] own medical records"); *Borden v. Astrue*, 494 F. Supp. 2d 1278, 1283 (N.D. Ala. 2007) (finding no good cause for an ALJ's rejection of an examining physician's medical opinions on the basis that the doctor "only examined the plaintiff once, but gave great weight to the reports of the state agency medical consultants who never examined the plaintiff") (citations omitted).

unsupported by existing medical evidence in the record. The ALJ's conclusion that Dr. Boutin's medical opinions were unpersuasive is supported by substantial evidence.

Mr. Mokhtarians' other arguments are unpersuasive. Mr. Mokhtarians claims "[t]he idea that the opinion of Dr. Boutin should not be given great weight because of no emergency room visits or hospitalizations is unreasonable and not supported by substantial evidence." (Doc. 19, p. 30). But the ALJ did not hold Dr. Boutin's medical opinions were unpersuasive *because* Mr. Mokhtarians was never hospitalized. The ALJ instead considered that evidence among all other medical evidence in the record in concluding Dr. Boutin's mental health evaluations were unsupported by the record. That conclusion was supported by substantial evidence. *See Kidd v. Berryhill*, No. 6:18-cv-790-JA-JBT, 2019 WL 2028671, at *3 (M.D. Fla. April 12, 2019) (holding "the heart of the ALJ's reasoning . . . that [the doctor's] severely restrictive opinions were inconsistent with the lack of any psychiatric hospitalizations or even emergency room visits, the lack of dire objective findings reflected in the treatment notes, and the lack of increased frequency of visits coinciding with the supposed worsening of Plaintiff's condition . . . [were] reasonable conclusions from the evidence").

Mr. Mokhtarians in a reply brief rebuts this conclusion from *Kidd v.*

*Berryhill* by citing to *Sonya E. v. Saul*, 446 F. Supp. 3d 1287 (N.D. Ga. 2020). (Doc. 22). In *Sonya E.*, the court stated "where all of the experts in the case substantially agreed in their conclusions about the severity of Plaintiff's limitations, the ALJ lacked a foundation for a 'conservative treatment finding' other than her own views regarding what constitutes an aggressive form of treatment." *Id*. at 1298. However, the sentence prior to this excerpt states "[a]n example of a proper evidentiary foundation would be . . . an examining or non-examining physician could provide an opinion, subject to the normal rules of weighing medical source evidence, that the course of treatment indicated a low severity of the condition." *Id*. That is what the ALJ did in finding Dr. Appenfeldt's medical opinions more persuasive than Dr. Boutin's. (Tr. 27).

Mr. Mokhtarians finally argues any inconsistencies between Dr. Boutin and Dr. Appenfeldt's mental health evaluations are unsubstantial because Dr. Appenfeldt examined Mr. Mokhtarians only once, as opposed to the eight total evaluations Dr. Boutin had conducted on Mr. Mokhtarians since 2013. (Tr. 31). But ALJs are permitted to consider the medical opinions of one-time evaluators "when [the opinions] are supported by other evidence in the record." *Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 881 (11th Cir. 2019) (*citing Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)). As previously discussed, the ALJ properly considered Dr. Boutin's mental health evaluations

14

in the context of the record as a whole and the ALJ's conclusion that Dr. Boutin's medical opinions are unpersuasive is supported by substantial evidence.

## IV. CONCLUSION

The Commissioner's decision is supported by substantial evidence. Thus, the undersigned **RECOMMENDS** the Commissioner's decision be **AFFIRMED** and the Clerk be directed to close the file.

**ENTERED** in Tampa, Florida on January 7, 2022.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

15

**NOTICE TO PARTIES**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.